UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SEENA CANTRELL, ) | | |
| Independent Administrator on behalf of ) | | |
| the Estate of Nathaniel Griffin, ) | | |
| ) | | |
| Plaintiff, ) | No. 18-cv-7008 | |
| ) | | |
| vs. ) | Judge Lee | |
| ) | | |
| COOK COUNTY, ) | | |
| Cook County Sheriff ) | | |
| THOMAS DART, ) | | |
| Cook County Correctional Officers ) | Jury Demand | |
| DAVID KIM, DAVID LEIST, ) | | |
| CESAR CARBAJAL, Cermak Health Services ) | | |
| Director of Mental Health CARLOS ) | | |
| QUEZADA-GOMEZ, and DANIELLE THOMAS, ) | | |
| ) | | |
| Defendants. ) | | |

**FIRST AMENDED COMPLAINT**

1.  This is an action for money damages brought pursuant to 42 U.S.C. § 1983, and the common law and statutes of the State of Illinois.

2.  Jurisdiction for Plaintiff's federal claims is based on 28 U.S.C. §§ 1331 and 1343(a).

3.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), in that all Defendants reside in this judicial district, and the events giving rise to the claims arose in this district as alleged below.

4.  Plaintiff Seena Cantrell, as the independent administrator of the Estate of Nathaniel Griffin, seeks redress for the deprivation under color of law of the rights of her son, Nathaniel Griffin, secured under the Constitution and Statutes of the United States.

**Parties**

5.  Plaintiff Seena Cantrell ("Plaintiff") is the mother of Nathaniel Griffin. She is a resident of Chicago, Illinois. She is the independent administrator of her son's estate which is

1

pending in the Circuit Court of Cook County, Case No. 17 P 6865.

6. Nathaniel Griffin ("Nathaniel" or "Decedent"), at all times relevant to this suit, was a pre-trial detainee at the Cook County Department of Corrections ("CCDOC"), in Chicago, Illinois. He was booked into CCDOC on April 12, 2017, and remained there until his death on September 5, 2017. He was 23 years old at the time of his death.

7. Defendant Cook County is a body politic and corporate situated in the Northern District of Illinois. CCDOC, Cermak Health Services and the Cook County Sheriff's Office are departments of Cook County.

8. Defendant Thomas Dart is the Sheriff of Cook County. He is the final policymaker responsible for all policies and practices of the CCDOC. This matter is brought against Defendant Dart in his official capacity.

9. Defendant Dr. Carlos Quezada-Gomez is the Director of Mental Health for Cermak Health Services. He is a key policymaker responsible for policies and practices for the provision of mental health services to inmates incarcerated at CCDOC. This matter is brought against Defendant Quezada-Gomez in his official capacity.

10. Defendant David Kim is a duly appointed and sworn CCDOC correctional officer. At all times relevant to this suit, Defendant Kim was acting in the course and scope of his employment, and under color of state law, ordinance and/or regulation.

11. Defendant David Leist is a duly appointed and sworn CCDOC correctional officer. At all times relevant to this suit, Defendant Leist was acting in the course and scope of his employment, and under color of state law, ordinance and/or regulation.

12. Defendant Cesar Carbajal is a duly appointed and sworn CCDOC correctional officer. At all times relevant to this suit, Defendant Carbajal was acting in the course and scope of his employment, and under color of state law, ordinance and/or regulation.

13. At the time of the occurrence, Defendant Dart was the employer of Defendants Kim, Leist, and Carbajal.

14. Defendant Danielle Thomas is a mental health staff person employed by Cermak Health Services  At all times relevant to this suit, Defendant Thomas was acting in the course and scope of her employment, and under color of state law, ordinance and/or regulation.

15. Defendant Cook County is the indemnifying entity for actions taken by Defendant Dart and/or his employees, and Defendants Dr. Quezada-Gomez and Thomas.

**Facts**

16. On April 12, 2017, Nathaniel Griffin was booked into CCDOC on a felony charge.

17. On April 13, 2017, Nathaniel told CCDOC officers that he was in fear of his life and had been threatened by inmates on his tier. At his request, he was moved to a protective custody tier.

18. On June 4, 2017, Nathaniel completed a Health Service Request Form ("HSRF"), writing "I feel like I wanna hurt myself and I can't sleep its making real mad."

19. Nathaniel was seen the next day for a psychological evaluation. Nathaniel told the mental health staff person that he was worried that his girlfriend, who had recently miscarried, would leave him. He also discussed other traumatic life events. The staff person recorded that Nathaniel was "agreeable to further M[ental] H[ealth] consults."

20. After being seen, Nathaniel was returned to his cell. No follow-up mental health consults were scheduled with any mental health staff.

21. Nathaniel did not receive any more mental health services until July 7, 2017. Nathaniel was then housed in Division 9, Tier 3G, a protective custody wing. On that date, Nathaniel told CCDOC Officer Perry #17944 that he wanted a psychological evaluation.

22. Officer Perry told Nathaniel that he would get him seen by someone.

23. After Officer Perry finished commissary, he checked on Nathaniel and saw that Nathaniel was tying a bed sheet to his cell door to hang himself.

24. Officer Perry confiscated the bed sheet and called Sergeant Hein, who advised Officer Perry that an officer would be sent up to escort Nathaniel to a psychological evaluation.

25. When Officer Perry returned to Nathaniel's cell to let him out, Nathaniel was hanging from a bedsheet that was tied to his cell door. Officer Perry immediately opened the cell door and removed the sheet from Nathaniel's neck.

26. Officer Perry wrote a report of this incident. An Inter-Agency Health Inquiry ("IAHI") form was completed by a CCDOC officer, noting "attempted self harm." This form

was given to a nurse who examined Nathaniel for physical injuries and to a mental health staff person, Defendant Danielle Thomas.

27. Nathaniel was brought to the medical wing, where he was examined by the nurse. After he was medically cleared, Nathaniel was brought to Defendant Thomas for a psychological evaluation.

28. Upon information and belief, Defendant Thomas did not speak with Officer Perry or Sergeant Hein, and made no attempt to gather from correctional staff any information about how Nathaniel had just tried to hang himself twice in a matter of minutes.

29. This was Nathaniel's second psychological evaluation in thirty-two days, with no mental health care provided in the interim.

30. Although Nathaniel had a psychological evaluation on June 5, 2017, Defendant Thomas recorded "No" in response to whether "Detainee has history of counseling or mental health evaluation/treatment."

31. Defendant Thomas also recorded "No" as to whether "Detainee has experienced a significant loss within the last 6 months," even though the notes from his June 5 visit refers to the miscarriage of his child.

32. Defendant Thomas recorded "No" in response to the statement that "Defendant has previous suicide attempts," even though a correctional officer had just stopped Nathaniel from two hanging attempts in a matter of minutes.

33. Defendant Thomas recorded "No" in response to the statement that "Detainee is thinking about killing himself" even though Nathaniel had tried to do just that shortly before Defendant Thomas saw him.

34. Defendant Thomas declined to refer Nathaniel for a suicide risk assessment. Defendant Thomas did not refer Nathaniel for any follow-up consultations with a qualified mental health professional, psychologist or psychiatrist.

35. Defendant Thomas did not arrange for any future follow-up visit with Nathaniel, or act to come up with any kind of mental health plan.

36. Defendant Thomas did not have Nathaniel referred to a suicide watch, or refer him for outpatient or inpatient mental health treatment.

37. In spite of the documentation of his suicide attempts that day, Defendant Thomas concluded that "[Nathaniel] does not currently display any clinical contradiction to return to assigned housing."

38. On or about September 3, 2017, Nathaniel was moved to Division 9, Tier 2F, cell 2228. He was assigned to that cell with one other cellmate.

39. On September 5, 2017, Nathaniel made three telephone calls. In one of the calls, he told the woman he was talking to that he was going to kill himself.

40. All of the calls made by Nathaniel Griffin that day were recorded. It is CCDOC policy to record all calls made by inmates.

41. Plaintiff propounded a written discovery request to Defendants asking for the names and badge numbers of any CCDOC staff who were assigned to monitor the calls made by Nathaniel Griffin. Defendants responded in writing that"[t]here is no document responsive to this request."

42. After the last of the three phone calls was completed at or around 4:08 p.m., Nathaniel asked a correctional officer for a psych visit, which is also known as a psychological evaluation.

43. The correctional officer told Nathaniel he would get a psych visit after he was returned to his cell.

44. This request was overheard by another inmate, who later reported it to investigators from the Cook County State's Attorney's Office.

45. No Defendant took Nathaniel to get a psychological evaluation that day or summoned a mental health professional to see Nathaniel.

46. Nathaniel then asked to be locked up in his cell.

47. Nathaniel was locked up in his cell by Defendant Kim at 4:18 p.m.

48. Nathaniel was discovered hanging in his cell by Defendant Leist at 5:19 p.m.

49. Defendant Carbajal was assigned to the same shift as Defendant Leist. He did not perform a cell check on Nathaniel.

50. No Defendant or other officer performed a cell check during the 61-minute period that Nathaniel was locked alone in his cell.

51. Cook County correctional officers are mandated by Illinois Jail Standards and by the Constitution of the United States to make regular inspections of cells and inmates, so that injured or mentally ill inmates are prevented from harming themselves and are provided medical treatment in a timely manner.

## COUNT I
### (42 U.S.C. § 1983 – Deliberate Indifference by Failure to Protect against Defendants Kim, Leist and Carbajal

52. Plaintiff realleges all of the above paragraphs and counts as if fully set forth herein.

53. Nathaniel Griffin, a pre-trial detainee housed in the Cook County Department of Corrections, an Illinois county jail, had a fundamental Due Process right, incorporated to the State and local municipalities through the Fourteenth Amendment, to be protected from personal and emotional injury.

54. Nathaniel Griffin was suffering from suicidal thoughts, which put him at great risk to his health and safety.

55. Defendants Kim, Leist and Carbajal had a duty to adequately protect Nathaniel Griffin to ensure he was safe from harming himself.

56. Defendants Kim, Leist and Carbajal were deliberately indifferent to Nathaniel Griffin's health and safety by failing to arrange for a psychological evaluation when he asked for one in the final hours of his life.

57. Defendants Kim, Leist and Carbajal were deliberately indifferent to Nathaniel Griffin's health and safety, by failing to protect Nathaniel Griffin while leaving him alone in a cell for approximately one hour without a cell check. As a result, Nathaniel Griffin was able to act on his suicidal tendencies and died.

58. Defendants Kim, Leist and Carbajal were aware of a substantial risk of harm to Nathaniel Griffin's health and they disregarded this risk by failing to take reasonable measures to address it.

59. Defendants Kim, Leist and Carbajal's deliberate indifference caused harm to

Nathaniel Griffin.

WHEREFORE, Plaintiff asks that this Honorable Court:

a) Enter judgment against Defendants Kim, Leist and John Does 1-4;

b) Award Plaintiff compensatory and punitive damages;

c) Award attorney's' fees and costs, and

d) Award any further relief that this Honorable Court deems just and equitable.

### COUNT II
### (42 U.S.C. § 1983 – Deliberate Indifference to Serious Mental Health Need against Defendant Thomas

60. Plaintiff realleges all of the above paragraphs and counts as if fully set forth herein.

61. Nathaniel Griffin, a pre-trial detainee housed in the Cook County Department of Corrections, an Illinois county jail, had a fundamental Due Process right, incorporated to the State and local municipalities through the Fourteenth Amendment, to be protected from personal and emotional injury.

62. While at CCDOC, Nathaniel Griffin suffered from suicidal thoughts and had attempted to act on those thoughts, which put him at great risk to his health and safety.

63. Nathaniel Griffin's suicidal behavior was evidence of a serious mental health need.

64. Defendant Thomas had a duty to adequately protect Nathaniel Griffin to ensure he was safe from harming himself.

65. Defendant Thomas was deliberately indifferent to Nathaniel Griffin's health and safety and failed to sufficiently respond to the suicidal attempts made on the same day she evaluated him.

66. Defendant Thomas was aware of a substantial risk of harm to Nathaniel Griffin's health and she disregarded this risk by failing to take reasonable measures to address it.

67. The deliberate indifference of the Defendant caused harm to Nathaniel Griffin.

WHEREFORE, Plaintiff asks that this Honorable Court:

      a)       Enter judgment against Defendants Thomas;

      b)       Award Plaintiff compensatory and punitive damages;

      c)       Award attorney's' fees and costs, and

      d)       Award any further relief that this Honorable Court deems just and equitable.

## COUNT III
### (42 U.S.C. § 1983 – *Monell* Claim against Defendant Dart)

68. Plaintiff realleges all of the above paragraphs and counts as if fully set forth herein.

69. Nathaniel Griffin, a pre-trial detainee housed in the Cook County Department of Corrections, an Illinois county jail, had a fundamental Fifth Amendment Due Process right, incorporated to the State and local municipalities through the Fourteenth Amendment, to be protected from personal and emotional injury.

70. Defendant Dart, as the Cook County Sheriff, was required under the Constitution to give reasonable and adequate protection to Nathaniel Griffin.

71. Defendant Dart was charged with promulgating directives, guidelines and procedure that address issues related to the housing of pretrial detainees.

72. At all times material to this Complaint, Defendant Dart had policies and/or procedures that knowingly put pre-trial detainees such as Nathaniel Griffin at serious risk, knowing there was a high likelihood these policies would ultimately lead to the death of inmates such as Nathaniel Griffin, including:

    a.     not maintaining enough staff to ensure that cell checks are timely conducted;

    b.     failing to require correctional officers to perform regular cell checks;

    c.     failing to audit records to confirm that required cell checks actually occur;

    d.     not maintaining enough staff to ensure that inmates who request psychological evaluations can get them promptly;

8

      e.    not ensuring that inmate threats of suicide made during telephone calls are promptly reported and acted on.

73. As a result of these policies and/or procedures, Nathaniel Griffin, an inmate with suicidal intentions, was not taken to a psychological evaluation and was left unchecked in his cell for an hour during which he hung himself.

74. The actions Defendants Kim, Leist and Carbajal as alleged in this Complaint were done pursuant to, and as a result of the above de facto practices, policies and customs.

75. Defendant Dart has final policy-making authority and is responsible for the above-described policies, practices and customs.

76. Defendant Dart acted with deliberate indifference to the rights of Plaintiff's decedent in maintaining, overlooking and preserving the unconstitutional practices, policies and customs delineated above.

77. By his inaction and failure to correct the above-described policies and procedures, Defendant Dart tacitly approved and thus indirectly authorized the type of misconduct Plaintiff complains of herein.

WHEREFORE, Plaintiff asks that this Honorable Court:

a) Enter judgment against Defendant Dart;

b) Award Plaintiff compensatory damages, as determined at trial;

c) Award Plaintiff attorney's fees and costs and

d) Award such other and additional relief that this Honorable Court deems just and equitable.

## COUNT IV
### (42 U.S.C. § 1983 – *Monell* Claim against Defendant Quezada-Gomez)

78. Plaintiff realleges all of the above paragraphs and counts as if fully set forth herein.

79. Nathaniel Griffin, a pre-trial detainee housed in the Cook County Department of Corrections, an Illinois county jail, had a fundamental Fifth Amendment Due Process right, incorporated to the State and local municipalities through the Fourteenth Amendment, to be protected from personal and emotional injury.

80. Defendant Quezada-Gomez, as the Director of Mental Health for Cermak Health Services, was required under the Constitution to give reasonable and adequate mental health care to Nathaniel Griffin.

81. Defendant Quezada-Gomez was charged with promulgating directives, guidelines and procedure that address issues relating the assessment of the mental health needs of inmates, including risk for suicide.

82. At all times material to this Complaint, Defendant Quezada-Gomez had policies and/or procedures that knowingly put pre-trial detainees such as Nathaniel Griffin at serious risk, knowing there was a high likelihood these policies would ultimately lead to the death of inmates such as Nathaniel Griffin, including:

    a. failing to ensure that mental health staff thoroughly assess the suicidal risk potential of inmates whom they evaluate;

    b. failing to ensure that mental health staff confer with correctional staff who observed and/or prevented suicidal behavior or other self-harm by inmates later brought to mental health staff for evaluation;

    c. failing to ensure that mental health staff review the previous mental health notes of inmates when assessing their mental health needs.

83. As a result of these policies and/or procedures, Nathaniel Griffin, an inmate with documented suicidal tendencies, was not provided adequate mental health services though he had attempted to hang himself with a bedsheet on two occasions shortly before being brought to a mental health staff person, Defendant Thomas.

84. The actions of Defendant Thomas as alleged in this Complaint were done pursuant to, and as a result of the above de facto practices, policies and customs.

85. Defendant Quezada-Gomez shares final policy-making authority and is responsible for the above-described policies, practices and customs.

86. Defendant Quezada-Gomez acted with deliberate indifference to the rights of Plaintiff's decedent in maintaining, overlooking and preserving the unconstitutional practices, policies and customs delineated above.

87. By his inaction and failure to correct the above-described policies and procedures,

Defendant Quezada-Gomez tacitly approved and thus indirectly authorized the type of misconduct Plaintiff complains of herein.

WHEREFORE, Plaintiff asks that this Honorable Court:

a) Enter judgment against Defendant Quezada-Gomez;

b) Award Plaintiff compensatory damages, as determined at trial;

c) Award Plaintiff attorney's fees and costs and

d) Award such other and additional relief that this Honorable Court deems just and equitable.

## COUNT V
### (Indemnification Claim pursuant to 745 ILCS 10/9-102)

88. The acts of the Defendants, all of whom are employees of Cook County, described in the above claims were willful and wanton, and committed in the scope of employment.

89. Pursuant to the Illinois Tort Immunity Act, 745 ILCS 10/9-102, Defendant Cook County is liable for any judgments in this case arising from the Defendants' actions.

WHEREFORE, Plaintiff asks that this Honorable Court order Defendant Cook County to indemnify the Defendants for any judgment entered in this case arising from their actions.

**Jury Trial Demanded**

                              Respectfully submitted,

                              /s/ Daniel P. Kiss
                              *Counsel for the Plaintiff*

| | |
|---|---|
| Louis J. Meyer | Darryl A. Goldberg |
| Daniel P. Kiss | Law Offices of Darryl A. Goldberg |
| Meyer & Kiss, LLC | 33 North Dearborn Street, Suite 1830 |
| 53 West Jackson Boulevard, Suite 1735 | Chicago, Illinois 60602 |
| Chicago, Illinois 60604 | (773)793-3196 |
| (312)765-0100 | dgoldberg@goldbergdefense.com |
| dankiss@meyerkiss.com | |